UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 16-25347-CIV-MORENO

LA TELE PRODUCTIONS, INC.,

       Plaintiff,

vs.

TV AZTECA, COMAREX S.A. de CV,
AZTECA INTERNATIONAL CORP.,
AZTECA STATIONS LLC, and
INVESTMENT MEDIA GROUP, CORP.,

       Defendants.
_____/

## ORDER DISMISSING DEFENDANTS TV AZTECA AND COMAREX FOR LACK OF PERSONAL JURISDICTION

### I. Background

This suit stems from Defendants' alleged unlawful agreement to produce, broadcast, and distribute Plaintiff's telenovelas[1]—*Emperatriz* and *Las Dos Dianas*.[2] Plaintiff is allegedly the owner of all rights, title, and interests in the telenovelas' scripts, storylines, characters, and themes. In December 2001, Plaintiff purportedly offered the telenovelas to TV Azteca, Comarex, and Investment Media Group in Comarex's office in Coral Gables, Florida, but they declined to purchase a license for them. Plaintiff's agent, Fernando Fraiz, allegedly attended a National Association of Television Program Executives conference annually between 2001 and 2010, and on several occasions, met with Comarex's president, Marcel Vinay Sr., in Coral Gables, Florida, to offer the telenovelas to TV Azteca. In 2010, Plaintiff allegedly learned that TV Azteca was

---

[1] Telenovelas are "short serialized television dramas that are similar to American soap operas . . . [that] air during prime-time viewing hours." *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1236 (11th Cir. 2007).

[2] *Las Dos Dianas* was allegedly unlawfully produced by Defendant TV Azteca as *Cielo Rojo*.

starting production of the telenovelas, and that it had acquired them through its programming distributor Comarex and Investment Media Group. Thereafter, Plaintiff alleges it notified TV Azteca and Comarex that Plaintiff owned the exclusive rights to the telenovelas.

On April 8, 2011, Plaintiff's counsel allegedly sent Defendants a letter, warning them that TV Azteca was violating Plaintiff's exclusive copyrights to the telenovelas by producing them without Plaintiff's authorization. In response, Comarex and TV Azteca produced a June 17, 2011 certified document that transferred the telenovelas' copyrights back on November 3, 1998. Attached to the Plaintiff's Amended Complaint is a Venezuelan judge's order dated July 12, 2011, determining that the certified document was false and forged. Following this exchange, agents for Plaintiff and TV Azteca allegedly met in Miami around July 2011 to discuss TV Azteca's infringement of Plaintiff's copyrights.

After this meeting, the Defendants allegedly continued to broadcast the telenovelas globally, including in the United States, in violation of Plaintiff's copyrights. Plaintiff contends that TV Azteca replicated every aspect of the telenovelas, including the same plot, sequence of events, and characters. The replicas also purportedly possessed similar dialogue, pace, mood, and tone. Plaintiff submits that the alleged conspiracy is ongoing to the present day, as evidenced by Azteca International Corporation's offering of TV Azteca's "content" of the telenovelas, at the Conference in Miami, Florida in January 2018.

Plaintiff seeks damages and injunctive relief for: (I) Copyright Infringement under the Copyright Act, 17 U.S.C. § 101, *et seq.*; (II) Unfair Competition under Florida law; and (III) Civil Conspiracy under Florida law. TV Azteca and Comarex move to dismiss the Amended Complaint for lack of personal jurisdiction, improper venue, *forum non conveniens*, and under the doctrine of judicial estoppel.

Plaintiff submits that the Court has personal jurisdiction over all of the Defendants pursuant to Florida's long-arm statute because they each committed tortious acts, or alternatively, agreed to commit tortious acts in Florida. For the following reasons, the Amended Complaint is dismissed because the Court finds that Plaintiff has not met its burden of establishing specific personal jurisdiction over TV Azteca and Comarex.

## II. **Legal Standard**

On a motion to dismiss for lack of personal jurisdiction, the court accepts as true all allegations in the complaint and decides whether the plaintiff has met its burden of establishing a *prima facie* case of personal jurisdiction. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). "[W]here the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009).

When determining whether personal jurisdiction exists over a defendant, courts generally partake in a two-step analysis. *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323-25 (M.D. Fla. 2011). A court may exercise personal jurisdiction over a nonresident if: (1) the forum state's long-arm statute confers jurisdiction and (2) jurisdiction would not "offend traditional notions of fair play and substantial justice." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 807 (11th Cir. 2010) (citation and internal quotations omitted). Courts proceed to the second step only if the long-arm statute provides for jurisdiction. *Id.* A court must strictly construe the long-arm statute in assessing whether a plaintiff has satisfied its burden of producing affidavits, documents, or testimony that overcome a defendant's evidence challenging personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (citations omitted).

3

III. **Analysis**

Defendants TV Azteca and Comarex argue that the Verified Amended Complaint should be dismissed because the Court lacks personal jurisdiction over them. Personal jurisdiction over a nonresident defendant requires a two-part analysis. *Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282, 1292 (S.D. Fla. 2009). "When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction." *Sculptchair, Inc.*, 94 F.3d at 626-27. Here, the Court's subject matter jurisdiction is based on the Copyright Act—a federal law devoid of a service of process provision.[3] If there is a basis for personal jurisdiction under the state long-arm statute, the Court must next determine whether (1) sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment and (2) maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Exhibit Icons, LLC*, 609 F. Supp. 2d at 1292 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

Minimum contacts in the context of specific personal jurisdiction[4] involve three criteria. First, the contacts must be related to the plaintiff's cause of action or have given rise to it. *Id.* Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. *Id.* Third, the defendant's contacts within the forum state must be such that it should reasonably anticipate

---

[3] The Copyright Act provides that "[a]ny [temporary or final] injunction may be served anywhere in the United States on the person enjoined . . ." 17 U.S.C. § 502(b). Although Plaintiff seeks injunctive relief, the Court has yet to make a determination that injunctive relief is warranted, thus, section 502(b) is inapplicable at this stage.

[4] The Amended Complaint asserts only specific jurisdiction over Defendants "because they each committed tortious acts in this district . . ." D.E. 32 ¶ 11. TV Azteca and Comarex agree: "The Amended Complaint asserts only specific jurisdiction . . . and makes no allegations that would substantiate general jurisdiction . . ." D.E. 39 at 2; D.E. 40 at 2. Indeed, Plaintiff states in its Response that any part of TV Azteca or Comarex's motions that deal with general personal jurisdiction is "irrelevant and in the interest of judicial economy will not be addressed by LATELE." D.E. 45 at 8 n.6. Thus, the Court's analysis will center around specific personal jurisdiction.

being haled into court there. *Id.* Plaintiff argues that Defendants are subject to specific personal jurisdiction pursuant to Florida's long-arm statute because they committed tortious acts—whether in or out of the state—that caused Plaintiff injury in Florida. *See* Fla. Stat. § 48.193(1)(a)(2)[5] ("A person . . . submits himself or herself . . . to the jurisdiction of the courts of this state for . . . [c]ommitting a tortious act within this state."); *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1217 (11th Cir. 1999) (holding that personal jurisdiction is warranted under Florida's long-arm statute where the defendant committed tortious acts **outside the state** that caused **injury in Florida**) (emphasis added); *Robinson v. Giamarco & Bill, P.C.*, 74 F.3d 253, 257 (11th Cir. 1996) (same).

In this case, TV Azteca submits the declaration[6] of Rafael Rodriguez Sanchez, the Director of its Legal Department, who states that TV Azteca did not engage in any broadcasting, distributing, or producing of the telenovelas in the United States and, in essence, refuted Plaintiff's allegation that it offered Defendants a license for the telenovelas. D.E. 39, Ex. A ¶¶ 18-19, 28. Comarex submits the declaration of Marcel Vinay, Jr., its Chief Executive Officer, that states Comarex has never broadcasted, licensed, or produced the telenovelas at issue, D.E. 40, Ex. A ¶ 18, and never had business dealings with Plaintiff in Florida or elsewhere, *id.* at ¶ 21. In response, Plaintiff seems to maintain that because a civil conspiracy has been alleged, like in *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1354 (S.D. Fla.

---

[5] Florida's long-arm statute was amended in 2013. Cases decided prior to 2013 analyzed the "tortious act" version of Florida's long-arm statute as section 48.193(1)(b), which was amended to present day 48.193(1)(a)(2). The substance of the statute, however, remained unchanged.

[6] "Where [] the defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). "Where [the plaintiff's] complaint and supporting affidavits and documents conflict with the [d]efendants' affidavits, [the court] must construe all reasonable inferences in favor of the plaintiff." *Id.*

5

2009), Florida's long-arm statute is automatically satisfied. The critical phrase Plaintiff overlooks is that "at least one act in furtherance [of the conspiracy] . . . is committed in Florida." *Id.*

The Verified Amended Complaint alleges the following connections to Florida: (1) in December 2001, Plaintiff offered the telenovelas to TV Azteca, Comarex, and Investment Media Group during a meeting with Comarex's Vice President Marcel Vinay Jr. in Coral Gables, Florida, D.E. 32 ¶ 29; (2) on several occasions between 2001 and 2010, Fraiz attended the Conference in Coral Gables, Florida and offered the telenovelas' rights to TV Azteca, *id.* at ¶ 31; (3) In July 2011, Fraiz and Vinay Sr. met in Miami, Florida to discuss TV Azteca's infringement of Plaintiff's copyrights, *id.* at ¶ 38; (4) from 2011 to the present, TV Azteca wrongfully and intentionally produced, broadcasted, and distributed the telenovelas in the United States, *id.* at ¶ 42; (5) the foreign channels broadcasting the telenovelas are accessible online or on cable television in Florida, *id.* at ¶ 43; (6) the telenovelas broadcasted through TV Azteca's subsidiaries (including Defendant Azteca America) are available online with TV Azteca's logo and remain accessible in Florida and throughout the United States, *id.* at ¶ 44; and (7) Azteca International Corporation offered TV Azteca's content of the telenovelas at the Conference in Miami, Florida in January 2018, *id.* at ¶ 76.

The question is whether Plaintiff's proffered events are sufficient to find that TV Azteca and Comarex committed a tortious act in Florida, thereby satisfying Florida's long-arm statute.

### 1. Florida's Long-Arm Statute

Florida's long-arm statute is not satisfied because Plaintiff has failed to meet its burden of establishing specific personal jurisdiction. In applying Florida Statute 48.193(1)(a)(2), a person who commits a tortious act outside the state that results in harm within the state generally confers personal jurisdiction over the out-of-state entity. *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d

6

1317, 1329 (S.D. Fla. 2010) (holding that personal jurisdiction over an out of state entity was proper because the defendant owed fiduciary duties to the plaintiff that were allegedly breached). *See also Robinson*, 74 F.3d at 257 (holding that the long-arm statute extends jurisdiction over a defendant who allegedly caused injury in Florida by negligently drafting and reviewing a will outside of Florida).

TV Azteca and Comarex[7] are not subject to personal jurisdiction in Florida by virtue of the possibility that the telenovelas were broadcasted into Florida. The only allegations in the Amended Complaint that allege accessibility—either via the internet or cable television—of the telenovelas in Florida are: (a) from 2011 to the present, TV Azteca wrongfully and intentionally produced, broadcasted, and distributed the telenovelas **in the United States**, D.E. 32 at ¶ 42 (emphasis added); (b) *the foreign channels* broadcasting the telenovelas are accessible online or on cable television in Florida, *id.* at ¶ 43 (emphasis added); and (c) the telenovelas broadcasted through *TV Azteca's subsidiaries* (including Defendant Azteca America) are available online with TV Azteca's logo and remain accessible in Florida, *id.* at ¶ 44 (emphasis added). The allegations above do not suggest that TV Azteca or Comarex's actions outside of Florida resulted in tortious injury in Florida *specifically*.

Instead, Plaintiff suggests that TV Azteca wrongfully broadcasted the telenovelas "*in the United States*," but not specifically *in Florida*. Taking that wide-ranging allegation as true would mean that every state with a similar long-arm statute would possess specific personal jurisdiction over TV Azteca, simply by virtue of its status as a state in the Union. Such theory would surely run afoul of the Due Process Clause's fair warning requirement, because the defendant must have purposefully directed his activities at the forum—in this case Florida, not

---

[7] To be sure, Plaintiff does not allege that Comarex wrongfully broadcasted the telenovelas into Florida. The allegations center around TV Azteca and its subsidiaries.

7

the United States. Thus, that allegation, on its own, is insufficient to give rise to specific personal jurisdiction.

Next, Plaintiff claims that "foreign channels" and "TV Azteca's subsidiaries" broadcasted the telenovelas that are accessible in Florida. D.E. 32 ¶¶ 43-44. Florida's long-arm statute surely does not contemplate impugning the alleged tortious acts of wholly unrelated entities—*i.e.* foreign channels—onto TV Azteca. Nor does Plaintiff cite to such authority. However, the question arises whether TV Azteca can be subject to specific personal jurisdiction because of the actions of its alleged subsidiaries.

A corporation that engages in substantial activity in a state, through a subsidiary, is subject to personal jurisdiction in Florida. *Universal Caribbean Establishment v. Bard*, 543 So. 2d 447, 448 (Fla. 4th DCA 1989). To determine whether a foreign corporation is liable based on a subsidiary's substantial activity, the Court must consider the ownership of the subsidiary, the business activities of the subsidiary, and the financial relationship between the corporation and the subsidiary. *Abramson v. Walt Disney Co.*, 132 F. App'x 273, 276 (11th Cir. 2005) (applying section 48.193(1)(a) of Florida's long-arm statute) (citing *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272-73 (11th Cir. 2002)). "To establish an agency relationship, the foreign corporation must exercise such control that the subsidiary's sole purpose for existence is to accomplish the aims of the foreign corporation and there is no evidence of separate interests. Evidence of operational control is not satisfied where the foreign corporation's policy statements merely establish goals for its subsidiaries and where the subsidiaries operate with a 'high degree of autonomy.'" *Id.*

Accepting Plaintiff's factual allegations as true, Plaintiff claims that "TV Azteca's subsidiaries" broadcasted the telenovelas that are accessible in Florida. D.E. 32 ¶ 44. Plaintiff does not identify which of the subsidiaries it refers to, but the Court presumes they are Defendants Azteca International Corporation and Azteca Stations LLC, both allegedly incorporated in Delaware and conducting business in Florida. This allegation in the verified Amended Complaint, although ambiguous, is sufficient to state a *prima facie* case of jurisdiction under Florida's long-arm statute. However, the allegation was directly contradicted by Rafael Rodriguez Sanchez's declaration, wherein he explained that "Azteca America, a subsidiary of TV Azteca, operates completely independently from TV Azteca. Their headquarters are located in separate countries. They share no officers or directors, and have separate boards of directors." D.E. 39, Ex. A ¶ 20. Finally, Sanchez declared that "TV Azteca and Azteca America do not share accounts, or investments." *Id.* at ¶ 21. Sanchez's allegations are sufficient to shift the burden back to Plaintiff to produce evidence in support of jurisdiction. However, although Plaintiff's amended complaint is verified, Plaintiff did not provide testimony, or other evidence, to rebut TV Azteca's declaration as set forth in the personal jurisdiction burden-shifting framework.[8] *Abramson*, 132 F. App'x at 276 ("After a plaintiff has established a *prima facie* case for jurisdiction and the defendant has filed affidavits contesting jurisdiction, the plaintiff bears the burden of proving sufficient jurisdiction by affidavits or other sworn statements."). Thus, Plaintiff has not met its burden to show that the telenovelas being broadcasted in Florida were caused by the tortious acts of TV Azteca, or one of its subsidiaries.

The next inquiry is whether TV Azteca and Comarex are subject to specific personal jurisdiction because of the meetings that purportedly occurred in Florida. The Court finds that

---

[8] The Verified Amended Complaint does not provide allegations regarding the relationship among the various Defendants.

they are not. The Verified Amended Complaint alleges that: (a) in December 2001, Plaintiff offered the telenovelas to TV Azteca, Comarex, and Investment Media Group during a meeting with Vinay Jr. in Coral Gables, Florida, D.E. 32 at ¶ 29; (b) on several occasions between 2001 and 2010, Fraiz attended the Conference in Coral Gables, Florida and offered the telenovelas' rights to TV Azteca, *id.* at ¶ 31; (c) in July 2011, Fraiz and Vinay Sr. met in Miami, Florida to discuss TV Azteca's infringement of Plaintiff's copyrights, *id.* at ¶ 38; and (d) Defendant Azteca International Corporation offered TV Azteca's content of the telenovelas at the Conference in Miami, Florida in January 2018, *id.* at ¶ 76. In essence, over the span of seventeen years, the rights to the telenovelas were allegedly offered to TV Azteca and Comarex at the Conference and other non-Conference related meetings in Florida. Additionally, Plaintiff alleges that Fraiz and Vinay, Sr. met in Miami to discuss TV Azteca's alleged infringement of Plaintiff's copyrights.

Plaintiff's verified allegations regarding meetings that occurred in Florida are sufficient to state a *prima facie* case of jurisdiction under Florida's long-arm statute. Sanchez's declaration states that "TV Azteca never had any discussions or business dealings with Plaintiff LaTele in Florida or elsewhere." D.E. 39, Ex. A ¶ 24. Additionally, "TV Azteca representatives may travel sporadically to Florida [for the Conference and] . . . to meet with other international networks. These visits are neither constant nor methodical." *Id.* at ¶ 27. Importantly, Sanchez states that "Plaintiff [] did not offer the Novelas to TV Azteca . . . between 2001 and 2010." *Id.* at ¶ 28. Similarly, the declaration of Vinay, Jr. states that "Comarex has never had any discussions or business dealings with Plaintiff LaTele in Florida or elsewhere." D.E. 40 Ex. A ¶ 21.

The allegations of Sanchez and Vinay Jr. are sufficient to shift the burden back to Plaintiff to produce evidence in support of jurisdiction. Because Plaintiff has failed to provide

any evidence to counter TV Azteca and Comarex's allegations, Plaintiff has not met its burden of sufficiently alleging that the long-arm statute is satisfied under the theory that the meetings between the parties in Florida give rise to specific personal jurisdiction. *Abramson*, 132 F. App'x at 276 (stating that when a defendant has filed affidavits contesting jurisdiction, the plaintiff bears the burden of rebutting by affidavits or other sworn statements.).

Accordingly, the Amended Complaint is dismissed because Plaintiff has not met its burden of establishing specific personal jurisdiction under Florida's long-arm statute over TV Azteca and Comarex.

### 2. Minimum Contacts

Assuming *arguendo* that Plaintiff has met its burden and its allegations satisfy Florida's long-arm statute, the next question is whether subjecting TV Azteca and Comarex to personal jurisdiction in this Court comports with the Due Process Clause. Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant to have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *Robinson*, 74 F.3d at 258 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citation omitted)). This "fair warning" requirement is met if the defendant has purposefully directed his activities at the forum and the litigation results from alleged injuries that arise out of or relate to those activities. *Id.* (internal quotations and citations omitted). The defendant's contact with the forum state should give rise to a reasonable anticipation of being haled into court there. *Id.* (internal citations omitted).

TV Azteca and Comarex[9] did not have sufficient contacts in Florida to satisfy due process. A meeting in the forum state may constitute purposeful availment if it involves significant negotiations of important terms. *See Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 993 (11th Cir. 1986) (finding that holding meetings in the forum state to sign a boilerplate contract was not sufficient for minimum contacts). In this case, the alleged meetings that occurred in Florida can more aptly be referred to as "solicitations." *Sea Lift, Inc.*, 792 F.2d at 994 (describing the defendant's agent's presence in Florida to discuss a forthcoming business relationship as a "solicitation" rather than a "meeting"). "A direct solicitation by a foreign defendant of the business of a forum resident has been held to be 'purposeful availment' in cases where either a continuing relationship or some in-forum performance on the part of the plaintiff was contemplated." *Id.* (internal quotations and citations omitted). Here, Plaintiff alleges the parties discussed transferring the rights to the telenovelas were offered to TV Azteca and Comarex at several meetings in Florida. These meetings are exactly the types of solicitations that the Eleventh Circuit found insufficient in *Sea Lift*. The additional meeting held in July 2011 took place after the alleged infringement to discuss the infringement. That meeting cannot be said to be the type of "purposeful availment" of this forum to warrant finding the Defendants could have reasonably expected to be haled into court here. Rather, the meeting's purpose was to discuss what eventually became the subject of this case.

Even if Plaintiff had sustained its onus of rebutting TV Azteca and Comarex's declarations, Plaintiff's burden of establishing minimum contacts has not been met. At best, the

---

[9] As compared to TV Azteca, Comarex has less connection to Florida because, according to the Amended Complaint, Comarex did not participate in the alleged meeting in July 2011 between Plaintiff and TV Azteca to discuss copyright infringement.

alleged meetings in Florida are mere "solicitations" to sell the rights to the telenovelas or discuss remedies for the alleged infringement of said rights. Not only was a contract not memorialized, but there is no allegation that there were "negotiations of important terms." *Sea Lift, Inc.*, 792 F.2d at 993. Thus, neither TV Azteca nor Comarex purposely availed themselves of the benefits and protections of Florida law and even if Florida's long arm-statute is met, these Defendants should be dismissed because exercising personal jurisdiction over them would violate due process. Accordingly, Defendants TV Azteca and Comarex are DISMISSED for lack of personal jurisdiction.

DONE AND ORDERED in Chambers at Miami, Florida, this 25th of September 2018.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record