**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 16-CV-25347-MORENO/LOUIS

LATELE PRODUCTIONS, INC.,

      Plaintiff,

vs.

TV AZTECA, COMAREX S.A. de CV,
AZTECA INTERNATIONAL CORP.,
AZTECA STATIONS LLC, and
INVESTMENT MEDIA GROUP, CORP.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON MOTIONS FOR SANCTIONS

This cause is before the Court upon Defendants' Renewed Motions for Sanctions (ECF Nos. 150, 151). These Motions were referred to the undersigned United States Magistrate Judge by the Honorable Federico A. Moreno, United States District Judge, to submit a Report and Recommendation (ECF No. 149). Defendants move for sanctions against Plaintiff, Plaintiff's president Fernando Fraiz, and Plaintiff's counsel Albert Piantini and Andrew Kassier, for bringing this suit in objective frivolity and subjective bad faith; and for failing to disclose to the Court prior sworn testimony demonstrating the absence of Plaintiff's ownership of the subject copyrights.

A hearing was conducted over multiple days, during which Plaintiff's representative and its co-owners testified, as did attorneys Piantini and Kassier. Upon consideration of the Motions, Response, supplements filed in support of both, evidence received at the hearing, and being otherwise apprised of the circumstances, the undersigned recommends that the Motions be granted and sanctions be entered against Plaintiff and Plaintiff's counsel for filing the Amended

1

Complaint; and that Plaintiffs be ordered to compensate Defendants for their fees and costs incurred, in part.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### a.   Relevant history of Latele Productions and Latele Television

Plaintiff Latele Productions, Inc. is a closely held corporation owned by partners Fernando Fraiz and Danilo Garcia Escalona. As partners, Fraiz and Garcia own multiple entities with the name "Latele," including Plaintiff herein and Latele Television C.A., a Venezuelan entity that I will refer to as "Latele Veneuela." To distinguish the entities, I will refer to the Plaintiff as "Latele US." Fraiz and his partner use the name "Latele" to describe all of the companies, interchangeably. Their practice of not differentiating between the corporate forms foreshadows the unfortunate outcome in this case: the Latele entity that filed this copyright infringement suit was not the one that owned the contested copyrights at the time suit was filed.

It is helpful here to understand the corporate history.  According to the Amended Complaint (ECF No. 32), the copyrighted works at issue in this lawsuit, two novellas entitled *Emperatriz* and *Las Dos Dianas*, were authored in the early 1990's by a writer who was employed by Marte CVT Producciones de Television, S.A. ("Marte") (*id.*¶ 15). The writer assigned his rights to the novellas to his employer, Marte. In 2001, Fraiz purchased the parent company of Marte through his company Imagen and changed its name to Latele Television C.A. (Latele Venezuela). By virtue of that purchase, Latele Venezuela owned the catalog of copyrighted novellas, including *Emperatriz* and *Las Dos Dianas*, and another novella that becomes important later in the story, *Maria Maria*. In April 2012, the Amended Complaint alleges, Fraiz transferred the catalog of copyrights from Latele Venezuela to himself and then to Latele US (*id.* at ¶ 22 n.7). The Amended Complaint, which is verified by Fraiz, evidenced the transfer by attaching notarized copies of the

Transfer Agreements (hereinafter "Assignments"); however, evidence refuting consummation of the transfer has been developed primarily in another lawsuit in this District, which also requires explanation.

In August of 2012, Latele Venezuela filed suit against Telemundo for allegedly broadcasting a telenovela that infringed upon its copyrighted work *Maria Maria*, the above-mentioned novella included in the catalog acquired through the Marte acquisition. *Latele Television, C.A. v. Telemundo Communications Group, LLC, et al.*, Case No. 1:12-cv-22539-JAL (S.D. Fla.) ("Telemundo Action"). At that point, Latele Venezuela claimed ownership of the copyright catalog obtained in the acquisition of Marte. Telemundo contested Latele Venezuela's ownership of the copyrights and thus its standing to sue for copyright infringement.

The Telemundo Action progressed into discovery. At deposition, defendant Telemundo confronted Fraiz, who testified on behalf of Latele Venezuela, with an unexecuted copy of the assignment of copyrights from Latele Venezuela to himself individually. Fraiz denied under oath that the assignment was "perfected" and claimed he had done nothing with the assignment. To be clear, Fraiz testified that at no point had he contemplated entering into a transaction that would result in him personally owning the rights to the novellas in Latele Venezuela's catalog.[1]

Not satisfied with Fraiz's answers on the Assignments, Telemundo moved to compel documents related to transactions or negotiations involving the catalog of copyrighted novellas. Latele Venezuela responded that it had no such documents to produce. However, Telemundo later received from a third-party subpoena response <u>executed</u> copies of the Assignments of the copyrights from Latele Venezuela to Fraiz, and from Fraiz to Latele US—these are the Assignments attached to the Amended Complaint in this case.

---

[1] ECF No. 106-4 at 210 (Fraiz deposition of Feb. 21, 2014).

Telemundo moved to dismiss based on the evidence that Latele Venezuela assigned the copyrights away before filing suit and thus lacked standing to sue for infringement of the copyrights it no longer owned. Dismissal was also warranted as a sanction, argued Telemundo, for Latele Venezuela's failure to disclose the Assignments in response to discovery requests that demanded documents relating to that plaintiff's ownership of the contested copyrights. Latele Venezuela opposed the Motion, explaining in unequivocal language that despite the fully-executed Assignments, no transfer of ownership had ever occurred. Rather, the documents were signed in anticipation of a license agreement that was contemplated but never consummated. Plaintiff Latele Venezuela denied any wrongdoing and argued that Telemundo's motion was predicated on the faulty assumption that the documents had any legal import at all. Latele Venezuela's opposition, signed and filed by attorney Piantini, argued forcefully that defense counsel's assumption that the transaction occurred revealed its counsel's ignorance of the law.

Latele Venezuela supported its opposition with a sworn affidavit by Fraiz, who attested that he was at all relevant times the president and sole shareholder of both Latele Venezuela and Latele US. Fraiz testified that the Assignments were prepared in anticipation of a licensing agreement for the novellas, which would have afforded less favorable terms if the license was paid to the Venezuelan entity than the US entity. Fraiz testified that the Assignments were drafted and executed under the advice of his counsel so that the Venezuelan entity could sell the copyrights to the US entity should the deal go through; but none of the deals ever closed. Fraiz noted in support that he never changed the Registration of Copyright with the United States Copyright Office from Latele Venezuela because the transfer was never effectuated. In signing the affidavit, Fraiz specified that he did so on behalf of himself individually, and on behalf of Latele Venezuela, and Latele US.

In August 2014, Magistrate Judge Jonathan Goodman conducted an evidentiary hearing on the motion to dismiss and for sanctions. Fraiz testified and reiterated his statements that the Assignments were prepared in anticipation of a deal that failed to close; that the transfer never closed; no monies were paid by Latele US as contemplated for the transfer; and that he, as sole director of Latele US, had not executed any document authorizing the purchase of the novellas.[2]

Judge Goodman denied the motion to dismiss, relying in part on the sworn testimony of Fraiz and his attorney Peggy Garcia, who swore the Assignments were not valid. Judge Goodman did, however, conclude that Latele Venezuela had not told the truth in discovery. Specifically, Judge Goodman found that Latele Venezuela had provided an incorrect or "significantly misleading interrogatory answer" and "submitted a false or substantially incorrect declaration, [and] provided incorrect or misleading deposition testimony."[3] As a sanction for its bad faith discovery misconduct, Judge Goodman ordered that expenses incurred by the violation be paid by plaintiff Latele Venezuela.

Following the hearing (and not relatedly), Latele Venezuela was placed in receivership proceedings, Fraiz was removed from his position, and a Venezuelan court appointed Junta Interventora del Grupo Imagen ("La Junta") to assume its operations. Fraiz has refused to accept the change in control over Latele Venezuela and even filed a declaratory action seeking an order determining his ownership. *See Latele Television C.A. v. La Junta Interventora, et al.*, Case No. 15-cv-23639.

---

[2] Latele Venezuela also advanced evidence that the novella at issue in that suit, *Maria Maria*, had been carved out of the transfer by an even-later disclosed addendum—the authenticity of which Telemundo disputed—which surfaced only after defendant Telemundo sought dismissal as a sanction for failure to produce the Assignments in discovery. Notwithstanding Plaintiff's insistence that the purported carve-out or addendum reconciles Fraiz's claim on behalf of both Latele entities of ownership of the contested copyrights, it is completely irrelevant; the fact remains that Fraiz testified repeatedly and unambiguously that the underlying transfer of the catalog purportedly evidenced by the Assignments was never consummated.

[3] Judge Goodman's Order is attached to Defendants' renewed motion for sanctions (ECF No. 151-7); on the original docket, it is docket entry number 368.

### b. **The Present Lawsuit**

Latele US instituted this suit in December of 2016 against Defendants TV Azteca and Comarex, both foreign companies headquartered in Mexico (ECF No. 1 at ¶¶ 2-3). Latele US retained the law firm of Rivero Mestre, which had not represented Latele Venezuela in the Telemundo Action, to file the Complaint. The Complaint alleged claims of copyright infringement, unfair competition, and unjust enrichment, arising from allegations that Defendants had broadcast infringing versions of the novellas, including broadcasts that were accessible from Florida. The case was initially dismissed for failure to serve, then reopened on reconsideration, and Defendants TV Azteca and Comarex were finally served in late 2017.

Defendants TV Azteca and Comarex first appeared in this case on November 9, 2017. According to the time diaries submitted in support of their demand for fees on these Motions, defense counsel by that time had already identified the evidence from the Telemundo Action undermining Latele US's claim of ownership of the copyrights and ability to bring this suit; indeed, defense counsel was already working on a motion for sanctions under Rule 11 (ECF No. 153-1 at 34, 42).

Defendants TV Azteca and Comarex each filed motions to dismiss the complaint on December 5, 2017 (ECF Nos. 20, 21). The motions raised identical defenses of personal jurisdiction, improper venue, and forum non-conveniens. Each also raised the issue of Plaintiff's standing, but only in a footnote:

> Based on the sworn admissions of Fernando Fraiz, Plaintiff's President in the related case of [Telemundo Action], the rights to the Novellas were never transferred to Plaintiff, but, rather, remained with [Latele Venezuela]…the rights to the Novellas were not assigned to Plaintiff. Hence, although outside of the purview of this motion, there are serious questions as to whether Plaintiff has standing to bring the current action. Although requested, Plaintiff has not provided the assignment under which it claims standing in this current case.

(ECF Nos. 20, 21 at n.1). While the motions noted the factual challenge to Plaintiff's claim of ownership, Defendants did not seek dismissal on the basis that the Court lacked subject matter jurisdiction; the footnote quoted above suggests the Defendants were awaiting proof of assignment they had "requested" but Plaintiff had not yet "provided."

On December 8, 2017, defense counsel's time diaries memorialize conferral with Plaintiff's counsel about the contemplated motion for sanctions (ECF No. 153-1 at 52). Days later, Plaintiff's counsel from the firm Rivero Mestre moved to withdraw, citing an inability to "reach an agreement regarding matters germane to the attorney-client relationship" (ECF No. 17). Shortly after the motion to withdraw was granted, attorneys Andrew Michael Kassier and Albert Piantini filed notices of appearance on behalf of Latele US.

Attorneys Piantini and Kassier sought leave to file an amended complaint in effort to address the deficiencies identified in Defendants' pending motions to dismiss. Counsel identified three aspects of the complaint in need of revision, including facts pertaining to personal jurisdiction and venue, and additional facts "to provide a full and accurate chronology of the ownership of the copyrights which are the subject of this lawsuit" (ECF No. 29 at 3). The Court granted leave, and counsel filed the Verified Amended Complaint on January 31, 2018 (ECF No. 32).

The Amended Complaint named new Defendants Azteca International Corp., Azteca Stations, LLC, and Investment Media Group, Corp., collectively the "New Defendants." The New Defendants are all Delaware corporations, allegedly registered to do business in Florida. The Amended Complaint alleged, as a basis for the Court to exercise personal jurisdiction over the original foreign Defendants, that they conspired to commit the tortious acts that harmed Plaintiff, and that the New Defendants committed those acts in Florida.

The Amended Complaint generally makes the same factual allegations supporting Plaintiff's claim of ownership of the copyrights, and more specifically alleges that in April 2012, Fraiz, as owner and holder of 99% of the shares in Latele Venezuela, assigned the copyrights to his wholly owned corporation Latele US (ECF No. 32 at ¶ 22). The Amended Complaint is supported by several exhibits, including the second assignment agreement, which is entitled Copyright Assignment and Transfer Agreement between Fraiz and Latele US, and dated April 18, 2012. The Transfer Agreement, which is notarized by Fraiz's attorney Peggy Garcia, memorializes an agreement to transfer the copyrights to the novellas from Fraiz to Latele US for a purchase price of $3,500,000, to be paid at closing. The Transfer Agreement identifies the list of novellas transferred in an attached "Exhibit A"; the Transfer Agreement contemplates execution of a promissory note at closing, the form of which is also purportedly affixed as "Exhibit A."

Defendants TV Azteca and Comerax responded to the Amended Complaint by again moving to dismiss, raising the same personal jurisdictional and venue challenges previously made, and additionally seeking dismissal under the doctrine of judicial estoppel (ECF Nos. 39, 40). The New Defendants moved to dismiss for failure to state a claim; under the doctrine of forum *non-conveniens*; and under the doctrine of judicial estoppel (ECF No. 82). The argument for judicial estoppel is premised on the fact that Fraiz, as president and sole owner of Plaintiff,[4] has taken wholly inconsistent positions in this litigation and the Telemundo action. The New Defendants further argued that the Amended Complaint failed to meaningfully plead facts to support the claims against them, and instead improperly intermingled allegations of acts committed by other entities with allegations relating to the New Defendants, ultimately failing to allege an actionable claim

---

[4] An attentive reader may recall that Plaintiff is described above as having two owners, Fraiz and his partner Danilo Garcia; Garcia's ownership interest had not yet been revealed at this time. Only after Defendants moved for sanctions against Plaintiff and Fraiz, as owner and president, was Garcia's ownership disclosed.

for conspiracy. The New Defendants accused Latele US of adding them to the suit in the conspiracy claim as a proxy to the forum in order to justify suing the original foreign Defendants, over whom the Court had no basis to exercise personal jurisdiction.

After the motions to dismiss were fully briefed and a hearing had been conducted, Defendants—all of them—filed an Amended Motion to Dismiss for want of subject matter jurisdiction, raising a factual attack on Plaintiff's standing to bring the claims (ECF No. 106). In response to Defendants' attack, Plaintiff relied entirely upon its verified Amended Complaint and the attached exhibits, including the Transfer Agreement (Assignment), and argued that discovery would "reveal when and why Mr. Fraiz decided to leave the subject catalogue of telenovelas where it reposed, in the hand of Plaintiff" (ECF No. 123 at 9).

In December of 2018, I entered a Report and Recommendation finding that Plaintiff did not own the copyrights at issue and had failed to meet its burden to show that it owned the contested copyrights at the time it initiated the suit. In so finding, I relied on Fraiz's unrefuted testimony given in the Telemundo Action that no closing had occurred; that no consideration was paid; and that no promissory note was executed as a condition of the assignment. Fraiz, who had specified in his sworn affidavit that he gave that testimony on behalf of Latele US as well as Latele Venezuela, testified consistently in his affidavit and under cross-examination that he had not intended the transfer of copyrights to occur, had not executed necessary documentation on behalf of Latele US for the transfer to occur, and caused no consideration to be paid for the transfer. I further considered evidence of events that followed the execution of the Assignments in 2012 demonstrating that Latele Venezuela continued to act consistently with continued ownership, including filing the suit against Telemundo three months after the Assignments were executed in 2012; and, in 2013, entering into a settlement agreement in which Fraiz warranted that Latele

Venezuela owned the catalogue of copyrights at issue. Finally, I observed that Plaintiff offered no evidence that it had registered the copyrights, a requirement the Eleventh Circuit has interpreted as a jurisdictional prerequisite to an infringement suit.[5]

Accordingly, the Report and Recommendation recommended that the motion to dismiss be granted. I advised the parties of the deadline to file objections and that failure to object within that time would bar the parties from a *de novo* determination by the District Judge of any factual or legal issue covered in the Report. Before objections to the Report were due, Plaintiff filed a notice of voluntary dismissal (ECF No. 142). This Court acted upon the notice in entering a Final Order of Dismissal, which dismissed the case with prejudice and denied as moot all motions pending at that time, with leave to renew if appropriate.

### c. The Motions for Sanctions

### 1. First Motion

Defendants TV Azteca and Comarex first moved for sanctions pursuant to Federal Rule of Civil Procedure 11 in March 2018, shortly after the Amended Complaint was filed (ECF No. 54). The Motion is predicated on the evidence developed in the Telemundo Action showing that Fraiz, on behalf of both Latele Venezuela and Latele US, testified that despite the executed Assignments, no transfer of copyrights had ever occurred between the entities. Defendants asked the Court to sanction Plaintiff for bringing a case in which it had no standing because the evidence expressly negated any claim of ownership by Latele US.

Defendants' Motion quotes extensively from the Telemundo Action, including testimony from Fraiz and his attorney Peggy Garcia; and from the opposition prepared and signed by counsel Piantini and Kaisser—all of whom forcefully advanced the fact that no transfer of copyright

---

[5] *Telemax Entm't, Inc. v. Telemundo Network, Inc*., No. 04-20150-CIV-GRAHAM, 2004 WL 3019373, at *2 (S.D. Fla. Dec. 16, 2004).

ownership had occurred between the Latele entities as apparently evidenced by the Assignments. Defendants' Sanctions Motion offers a blunt assessment of why Plaintiff and its counsel would file suit through Latele US despite the glaring absence of ownership: first, Latele Venezuela was in receivership proceedings, and Fraiz's right to control it had been unfavorably decided, so he could not bring the suit on its behalf; and second, Latele Venezuela had in 2014 issued a statement that the rights to the novellas had reverted to its author. But Latele US, still owned and controlled by Fraiz, could assert the claims and advance as proof of ownership the 2012 Assignments which, on their face, evidenced a transfer to Latele US. Defendants characterized Fraiz's shift in position with respect to the validity of the Assignments as "deliberately calculated to avoid issues with Latele Venezuela's standing" (ECF No. 54 at 11).

In response, Plaintiff first argues that its position was not inconsistent with any position taken in the Telemundo Action, because it had not *appeared* in the Telemundo Action; a different position taken by a different plaintiff could not, it argued, be held against Plaintiff herein. Second, Plaintiff resisted the characterization of Fraiz's (or his attorney Peggy Garcia's) testimony as applicable to the novellas at issue in this case at all, because that suit involved a different novella and thus his testimony there should be applied only to the question of ownership of the copyright to that novella. Finally, Plaintiff argued that Fraiz's testimony in the Telemundo Action just might have been wrong:

> This Court cannot and should not, overlook the fact that Mr. Fraiz is not an attorney, and thus, as a layperson, may have been under the belief that the subject assignments (from Latele Venezuela, C.A. to himself, and then to LATELE), as conditions precedent to the "Televisa deal," were not valid, although the use of the translated word ("anulado") as "void" was legally incorrect.

(ECF No. 61 at 7) (emphasis added). Applying principles of contract law, the opposition argues that the Assignments are "at best" voidable for want of consideration for the transfer, but, unless

Fraiz reverses the transfer via written documents, the Assignments are valid and ownership lies with Latele US. Plaintiff supported its argument that the Assignments are valid, notwithstanding the uncontroverted evidence that no transfer was intended or effectuated by Fraiz or his wholly-owned companies, by citation to a single case: *Pitts v. Pastore*, 561 So. 2d 297, 300 (Fla. 2d DCA 1990), which Plaintiff cited for the proposition that there is a difference legally between "void" and "voidable" transfer documents. Notably absent from Plaintiff's opposition to the motions for sanctions is any description of pre-filing investigation that led to Plaintiff or counsel's conclusion that the Assignments are "valid," if "voidable."

A hearing was conducted on the First Motion for Sanctions before the undersigned in June 2018. Despite my observation at the hearing that the movant had not met its burden of showing frivolity at that early pre-discovery stage, no written Report and Recommendation was filed before Defendants were terminated from the case. In September 2018, when the Court granted Defendants' Motions to Dismiss based on personal jurisdiction over Defendants Comerax and TV Azteca, they were dismissed from this suit and upon their dismissal, the Motion for Sanctions was terminated (ECF No. 115).

### 2. **The Second Motion for Sanctions**

The New Defendants moved for sanctions pursuant to Rule 11 in November 2018 (ECF No. 128) (the "Second Motion"). The Second Motion similarly sought sanctions, including an order of dismissal with prejudice, for filing a lawsuit predicated on a claim that it owned copyrights pursuant to the Assignments, which Plaintiff and its counsel had testified in the Telemundo Action had no legal effect because the transfer had not in fact occurred. Defendants also argued that Plaintiff's counsels' failure to disclose the sworn testimony in the Telemundo Action was an

attempt to mislead the Court. Defendants sought an order imposing sanctions against Plaintiff, its counsel, and non-party Fernando Fraiz, Plaintiff's owner.

Plaintiff's response in opposition to the Second Motion focuses first and foremost on the fact that it was a <u>second</u> motion; arguing that the New Defendants were represented by the same attorneys as the now dismissed TV Azteca and Comerax Defendants, Plaintiff challenged the motion as an improper attempt to reargue the first motion for sanctions, on which no ruling had been entered. Plaintiff again raises the arguments that the Telemundo Action involved a different novella and was prosecuted by a different plaintiff, whose statements and position in that litigation could not be held against Plaintiff herein (ECF No. 137).

Within a week of the Second Motion for sanctions becoming ripe, I entered the Report and Recommendation on the Amended Motion to Dismiss. A week later, Plaintiff noticed voluntary dismissal (ECF No. 142), which the Court acted upon and dismissed the case with prejudice (ECF No. 145). As noted above, the Second Motion too was terminated by virtue of the Court's Final Order of Dismissal, with leave to renew. Defendants sought leave to refile their motions for sanctions, which the Court granted. Both sets of Defendants renewed their Motions for Sanctions without any derivation from the originally served and filed motions (ECF Nos. 150 151).

Defendants seek an order awarding sanctions against Plaintiff, its owner Fraiz and its counsel (collectively "Plaintiffs"), and awarding Defendants all fees and costs incurred in this lawsuit. Defendants argue that Plaintiff should bear the burden of all fees and costs because all work performed on this matter is attributable to the frivolously filed Amended Complaint. I ordered supplemental briefing specific to the question of what sanctions are being sought and against whom. Defendants responded (ECF No. 153), attaching time records for counsel who

billed on the case and explaining that sanctions are sought against Plaintiff, its owner Fraiz, and counsel Piantini and Kaisser, all jointly and severally.

Plaintiff similarly filed a supplemental brief, arguing that the renewed Motions should be denied for the same reasons previously expressed by the Court at the June 13, 2018 hearing. Plaintiff urged that the Court could still not weigh the evidence advanced but must limit the inquiry to whether allegations raised in the Amended Complaint were plausible.

Plaintiff also advanced new evidence and arguments to support its claim of ownership of the copyrights. Plaintiff's current theory of ownership is that the Assignments, executed in 2012, transferred the copyrights to Latele US even though none of the parties to the transaction actually intended the transfer to go through; it just happened when Fraiz signed the documents in anticipation of a licensing deal (that never closed). Plaintiff's theory is predicated on Section 204 of the Copyright Act, which forbids the assertion of a claim of copyright that is not evidenced by a writing: Plaintiff (more precisely, Plaintiff's counsel) contends that in 2017, they discovered this provision of the Copyright Act through diligent legal research, prior to filing the Amended Complaint. Before then, Fraiz mistakenly believed, based on *contract law*, that the transfers had not occurred and thus his testimony in 2014 was wrong, but not perjurious.

### 3. The Hearing

An evidentiary hearing on the renewed Motions began on April 29, 2019, amid a flurry of evidentiary motions challenging witness lists exchanged and witnesses sought. On the first day of the hearing, attorney Kassier and Plaintiff's president Fraiz testified.

Andrew Kassier, an attorney since 1981, acknowledged that the claim of ownership by Latele US was inconsistent with the position he advanced in the Telemundo Action that the assignments were not operative. He further acknowledged that he was counsel of record in both

cases, which were simultaneously pending, and that he had not taken any steps to correct the representations made to the court in the Telemundo Action regarding the efficacy of the Assignments. Kassier testified that in preparing the pleadings in the Telemundo Action that took the position that the Assignments were ineffective, he relied on information provided to him from Fraiz—or more accurately, from Piantini who translated for Fraiz, as Kassier does not speak Spanish and Fraiz does not speak English. Kassier testified that he drafted the affidavit that Fraiz executed in the Telemundo Action and acknowledged that Fraiz's testimony was provided on behalf of himself and both Latele US and Latele Venezuela, though Kassier resisted the characterization of an affidavit as providing "testimony."

Having reached the determination in 2014 that, despite the executed Assignments, no transfer had occurred to Latele US, Kassier offered to explain how a different conclusion was later reached when he drafted the Amended Complaint herein:

> It was in the course of doing our due diligence and investigation in preparing the amended complaint that I realized that not as a matter of contract law but as a matter of copyright law, once Mr. Fraiz had executed those documents, unless and until he did something in writing -- in writing to disavow them, they were, in fact, operative based upon 17 USC [§] 204.[6]

(ECF No. 170 at 79). Kassier testified that as a part of performing "due diligence" on the ownership issue, he conducted legal research and that he shared the results of his research, described above, to attorney Piantini. Kassier testified that in that window of time between taking over the file from the law firm of Rivera Mestre and filing the Amended Complaint, he realized that Fraiz's "subjective belief that the transfers weren't valid was incorrect, that it was factually incorrect based upon the law" (*id.* at 103).

---

[6] Counsel here is relying on the following language of the Act: "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."

Fernando Fraiz similarly testified at the hearing that he first determined that the Assignments were not revocable when attorneys Piantini and Kassier appeared in the case (ECF No. 170 at 140-141). He claimed that, at that time, he looked back at the documents and realized they clearly show they are irrevocable. Asked to explain how he came to file a lawsuit claiming ownership of the copyrights a year *before* reaching this determination, Fraiz testified that he gave the documents to the attorney of Rivero Mestre who filed suit (*id.* at 144-145); he did not, however, tell those attorneys about the testimony he had given in the Telemundo Action.

In response to my questions, Fraiz testified that he actually came to believe that Latele US—not Latele Venezuela—owned the copyrights when he and his partner retained Rivero Mestre (prior to filing suit) (*id.* at 214). Fraiz also testified that he sold half of his interest in Latele US in either 2014, 2015, or 2016 to his partner Danilo Garcia, and it was in conjunction with his partner's due diligence performed before buying his interest that he and Garcia reviewed the documents, at which point Fraiz first changed his mind and formed the belief that Latele US owned the copyrights[7] (*id.* at 216). Fraiz explained that he was motivated to seek out a partner when the "Venezuela problem" happened, in May of 2014 (*id.*). Fraiz testified that for him, "Latele" means all of the companies (*id.*).

Attorney Piantini testified that he had expertise in copyright law beginning in childhood, as he grew up in the arts. Piantini testified that at the time he caused the response to be filed on behalf of Latele Venezuela in the Telemundo Action, he believed that the Assignments were inoperable, based on his conversations with Fraiz and also with Garcia. Piantini offered his belief that, until he testified in that suit, Fraiz had not repudiated the operative transfers executed by the Assignments but that Fraiz effectively nullified the transfers on the stand when he testified in the

---

[7] That accounts for at least three distinct moments in time that Fraiz realized "for the first time" that the Assignments were valid and Latele US was the true owner of the copyrights.

Telemundo action. Piantini claimed that he later came to appreciate that Fraiz could not repudiate or nullify the transfers without a writing that transferred the copyrights back to Latele Venezuela, and it was a mistake for him to have believed in 2014 that he could do so without a writing. Piantini testified that he first realized his mistake in 2015, when he advised the clients (Fraiz and Garcia) that they could proceed with this lawsuit, although they did not hire him; they hired Rivero Mestre.

Piantini was asked to explain why, if he realized this "mistake" in 2015, he only first raised the theory that under copyright law the Assignments were irrevocable in this post-dismissal sanctions proceeding. Piantini answered simply that "it didn't come up until now." Piantini did not attempt to reconcile his claim to have made this legal revelation in 2015 with Kassier's testimony that *he* discovered the legal theory in 2017, in conjunction with drafting the Amended Complaint; or with Fraiz's claim that *he* realized the mistake in 2015 and had his new partner to confirm it as part of his due diligence. On cross-examination, however, Kassier elicited from Piantini that he had not told Kassier about the potential suit against Azteca in 2015.

Danilo Garcia testified that he became Fraiz's partner in February 2015. A forensic accountant by training, Garcia testified that he conducted his own due diligence into Latele US and Latele Venezuela by examining the documents before becoming partners in Fraiz's several companies, including but not limited to the two Latele entities relevant here. Between September and December of 2014, Garcia claimed he met with Fraiz and examined all the documents and, in his capacity as a forensic accountant and as an investor, he determined ownership of the copyrights was conveyed by the transfer documents to Latele US. He reached this determination based on the Assignments themselves, notarized by third parties, which he determined were totally valid and not subject to any other interpretation.

Garcia testified that Latele US was indebted to its stockholders (Garcia and Fraiz) for $3.5 million dollars. Asked to explain the note securing this debt, Garcia testified that in February 2015, in the process of executing their partnership agreement, and specific to Latele US, Garcia and Fraiz "decided that the asset would remain there; and the account that was payable in the amount of three-and-a-half million," equally divided between Garcia and Fraiz (ECF No. 181 at 93-94). Garcia explained that the "asset" is "part of the catalog, with all of its components" (*id.* at 94). "Catalog" in this context describes the catalog of copyrighted works, including those to the novellas at issue in this suit.

In response to the Court's question if he had read the transcript of Fraiz's prior testimony in the Telemundo Action, Garcia testified that he learned in August 2015 from Piantini that there was another statement by Fraiz that could be "confusing." ECF No. 181 at 81. Garcia first testified that he did not himself read the transcript of Fraiz's testimony, but later testified that he did indeed read some of the transcript. Garcia explained that he and his partner Fraiz consulted with Rivero Mestre and, about a year later, this lawsuit was filed. Garcia testified that the reason his attorney from Rivero Mestre withdrew was due to his "own personal professional criteria." (*Id.* at 83). On cross, Garcia further explained that Rivera Mestre withdrew after receiving communication from defense counsel about the inconsistency in Fraiz's statements.

Plaintiff called a Venezuelan attorney, Dr. Shirley Carrizalles, who offered her opinion that the Assignment was valid and that she had seen no document that indicated to her the transfer was not valid. She admitted on cross-examination that she had not reviewed Fraiz's testimony given in the Telemundo Action.

## II.    DISCUSSION

Defendants seek an order imposing sanctions upon Plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure, and the Court's inherent authority. Federal courts derive their power to sanction any attorney, law firm, or party from three primary sources: Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the inherent power of the court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 41 (1991) (discussing the court of appeals' consideration of the three sources of sanctions).

The three sources authorize the imposition of sanctions in distinct but similar circumstances. "Rule 11 sanctions are proper (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (citation omitted). "[A]cts which degrade the judicial system, including attempts to deprive the Court of jurisdiction, fraud, misleading and lying to the Court," however, are sanctioned through the court's inherent power. *Chambers*, 501 U.S. at 41-42 (internal quotations omitted). In fact, "the wielding of that inherent power is particularly appropriate when the offending parties have practiced a fraud upon the court." *Id.* at 42.

### a.   <u>Plaintiffs violated Rule 11 by filing the Amended Complaint</u>

Rule 11 governs any pleading, written motion, or other paper filed with the court, and applies equally to attorneys, law firms, and parties. Fed. R. Civ. P. 11(b). When an attorney files a pleading in federal court, the attorney signs the pleading to certify that, among other things, (1) the pleading is not being presented for an improper purpose; (2) the legal contentions are warranted

19

by existing law or a nonfrivolous argument to change existing law; and (3) the factual contentions have evidentiary support or will likely have evidentiary support after discovery. Fed. R. Civ. P. 11(b). "The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (quoting 2 James Wm. Moore et al., Moore's Federal Practice § 11.03 (3d ed. 2010)).

To determine whether Rule 11 has been violated, a court analyzes two prongs: (1) whether the party's claims are objectively frivolous, in view of the facts or law; and (2) whether the person who signed the pleadings should have been aware that they were frivolous—that is, whether he would have been aware had he made a reasonable inquiry. *Id.*[8] The first prong considers what was reasonable to consider at the time the subject of the sanction motion was filed. If the first prong is proved, then a court analyzes the second prong: the reasonable inquiry. *Edgefield Holdings, LLC v. Adams*, No. 15-MC-23666, 2016 WL 7210441, at *2 (S.D. Fla. Dec. 13, 2016). The second prong focuses on whether the lawyer should have been aware that the claims were frivolous. *Id.* (quoting *Benavides v. Miami Atlanta Airfreight, Inc.*, 612 F. Supp. 2d 1236, 1238-39 (S.D. Fla. 2008)).

## 1. The Amended Complaint was Objectively Frivolous

Defendants move for sanctions on the grounds that the Amended Complaint was filed without reasonable factual basis and because it was filed in bad faith and with an improper purpose. Specifically, Defendants characterize Plaintiff's claim of ownership of the copyrights as objectively frivolous in light of its president's testimony that Latele Venezuela never transferred

---

[8] The undersigned's prior conclusion that the Plaintiff here lacks standing, and its recommendation that the Court dismiss the action for want of subject matter jurisdiction, is no impediment to the Court deciding the present motions for sanctions. A court may impose Rule 11 sanctions after finding that it is without subject matter jurisdiction because "[t]he interest in having rules of procedure obeyed . . . does not disappear upon" such a finding. *Matthiesen* 2018 WL 1121538, at *2 (quoting *Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992)).

the copyrights to Plaintiff herein. In response, Plaintiff offers to now prove its ownership of the copyrights: that despite Fraiz's sworn testimony to the contrary, the transfers apparently evidenced by the Assignments did in fact occur. Plaintiff argues that it has come to understand that under copyright law, the transfers to Latele US occurred because there was an executed writing, irrespective of parties' intent or absence of consideration. Plaintiff further offers evidence that Fraiz took steps consistent with that transfer occurring, and that Fraiz never transferred the copyrights back to Latele Venezuela, an affirmative act counsel argues that under copyright law, can only be accomplished by a separate writing.

A complaint is factually groundless and merits sanctions where the plaintiff has absolutely no evidence to support its allegations. *In re Mroz*, 65 F.3d 1567, 1573 (11th Cir. 1995). For the reasons explained below, I find that Plaintiff Latele US filed this suit without the ability to evidence ownership of the copyrights and that Plaintiff's counsel, with full awareness of this deficiency, joined the case and filed the Amended Complaint attaching the renounced Assignments.

First, it bears noting that it has already been found in this case that Plaintiff does not own—and cannot prove that it owns—the contested copyrights. In disposing of Defendants' Amended Motion to Dismiss, the undersigned found that Plaintiff could not prove its ownership of the copyrights at issue in this suit.[9] This finding was based on Plaintiff's failure to meet its burden in response to that factual attack on its basis for standing and adduce competent evidence to support its claim of ownership of the copyrights. Plaintiff filed no objections to the undersigned's Report, which warned Plaintiff that the consequence of failing to timely object would be waiver of its right

---

[9] Plaintiff's reliance on the observations made at the first hearing on Defendants' Motion for Sanctions in 2018 is misplaced for several reasons, but most critically because Plaintiff fails to appreciate what has changed since then: Plaintiff, when confronted with Defendants' factual challenge to its standing in this suit, *failed* meet *its* burden to adduce competent evidence in support of its claim of ownership. Unlike the posture at the first hearing, the evidence has been weighed against Plaintiff and its allegations are no longer taken as true.

to challenge factual findings by the District Court. Rather, Plaintiff noticed withdraw of its claims and suit was dismissed. Plaintiff's right to ask this Court to reconsider that finding now, on these Motions, is doubtful.

Yet Plaintiff (through counsel) now advances a variety of new evidence offered to prove its claim to own the contested copyrights. The timing of Plaintiff's efforts to investigate and prove its ownership is highly suspect, much like the sudden appearance of the "addendum" in the Telemundo Action, advanced by plaintiff Latele Venezuela only after defendant there moved for sanctions. I do not credit the evidence advanced at this post-dismissal stage that Fraiz—or Plaintiff Latele US—acted in a manner consistent with ownership of the copyrights. For example, in argument, attorney Piantini argued that Fraiz's decision to bring in a partner to Latele US was consistent with his belief that the company owned the copyrights. This was contradicted by the testimony of Fraiz and his partner Garcia.

To the extent I credit the testimony of these two witnesses, their testimony gravely undermined their attorneys' efforts to explain the apparent inconsistencies by the two different Latele plaintiffs, each claiming to own the catalogue of copyrights in 2014 and then 2016, as the result of a good faith misunderstanding of the legal significance of the documents. Rather, their testimony revealed that partners Fraiz and Garcia opportunistically decided to use the renounced Assignments to bring this suit, independently from any advice of counsel.

Fraiz testified that in 2014, after the trouble began in Venezuela, he was motivated to take on a partner. Shortly after swearing under oath that it was the owner of the copyrights because the transfer evidenced by the Assignments had not in fact occurred, Fraiz lost his legal ability to control Latele Venezuela. Fraiz testified that he asked his partner Garcia, a forensic accountant, to examine the Transfer Agreements to determine which entity owned the copyrights. His partner

performed his "due diligence," after which, Garcia testified, they decided to leave the asset (the catalog of copyrights) "there"—meaning, as an asset of Latele US. Garcia's testimony defeats the claim that anyone had an epiphany about copyright law and realized anything that supports a claim of mistake in Fraiz's earlier testimony. Rather, he and Fraiz <u>decided</u> to recognize the Assignments as evidence of Latele US's ownership of the copyrights.

Garcia's admission, while unmistakably significant to these proceedings, is not surprising considering, as foreshadowed above, the absence of corporate distinction practiced by Fraiz and his partner with respect to the Latele entities. Fraiz testified that, for him, "Latele" means all of the companies, without distinction. Fraiz's testimony further reveals that he and his partner viewed it as within his right to decide which company owned the copyrights as between Latele US and Latele Venezuela, even as he litigated against La Junta's control over the latter company. But irrespective of what later occurred, the evidence that no transfer occurred in 2012 is uncontroverted and thus, it was objectively unreasonable for Plaintiff to allege in the Amended Complaint—filed by counsel Piantini and Kassier and verified by Fraiz—that Latele US owned the copyrights as a result of that transfer.

## 2.   <u>Counsel failed to Undertake a Reasonable Inquiry before Filing</u>

Under the test established by Eleventh Circuit law, the court must now consider whether, despite the frivolity of Plaintiff's Amended Complaint, Plaintiff's counsel conducted a reasonable inquiry to determine the propriety of the claim. *Jones v. Int'l Riding Helmets, Ltd.*, 145 F.R.D. 120, 124 (N.D. Ga. 1992), *aff'd*, 49 F.3d 692 (11th Cir. 1995). If Plaintiff's attorney failed to make a reasonable inquiry as to whether Plaintiff's claims were objectively frivolous, then the Court must impose sanctions despite the attorney's good faith belief that the claims were sound. *Worldwide Primates, Inc.*, 87 F.3d at 1254. Relevant factors in making this determination include

the discoverability of the law using basic legal research and how much time for investigation was available before filing. *Id.*; *Gutierrez v. City of Hialeah*, 729 F. Supp. 1329, 1332 (S.D. Fla. 1990) (internal citations omitted).

In effort to avoid sanctions, Plaintiff urges the Court to find that the efforts undertaken to investigate Plaintiff's claim of ownership were reasonable. Indeed, Plaintiff maintains as its primary argument that, as a result of its efforts, it has determined that the Plaintiff *does* own the copyrights. Having already rejected the evidence advanced to prove the ownership claim, I similarly reject the evidence advanced to demonstrate pre-filing efforts and find that Plaintiff's attorneys failed to conduct the inquiry required of them by Rule 11. Specifically, I find that counsel failed to undertake a reasonable inquiry *before* filing the Amended Complaint, and their efforts to justify the claims since filing do not cure the violation that occurred at the time of filing.[10]

Counsel's investigation to determine whether Plaintiff's claims had evidentiary support should have included review of the Telemundo Action, which would have revealed the unequivocal evidence that the parties to the 2012 anticipated transfer of copyrights uniformly intended no transfer to occur and believed that no transfer had been made. As more fully recounted above, Fraiz testified under oath that he did not complete the anticipated transfer of copyrights from Latele Venezuela to himself and then to Latele US; he did not execute any authorization required by Latele US to purchase the copyright catalog; and he did not cause Latele US to execute the promissory note contemplated or pay the funds to Latele Venezuela. Indeed, he denied that he had even contemplated transferring the catalog to himself from Latele Venezuela. Critically, Fraiz

---

[10] Nor do I credit the evidence of Latele US's most recent steps taken, in response to these Sanctions Motions, to demonstrate conduct in conformity with its ownership of the copyrights. Because the claims were factually and legally baseless when they were filed, investigation conducted during the pendency of the litigation is irrelevant. *Thomas v. Early Cty., GA*, 360 F. App'x 71, 77 (11th Cir. 2010).

testified on behalf of himself, Latele Venezuela *and* on behalf of Latele US; and reasonable review of the record would have alerted counsel to this fact. *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 851 F. Supp. 2d 1299, 1314 (S.D. Fla. 2011) (citation omitted), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 503 F. App'x 677 (11th Cir. 2012).

In opposition to the Motion for Sanctions (ECF No. 137 at n.11), Plaintiff argued that attorney Piantini had not violated his duty to investigate, describing his "due diligence" as "including a review of the documents in the Telemundo case." His review was inadequate, and thus not reasonable, because despite this purported review, he went on to represent to this Court a number of demonstrably false material facts: for example, his representation that Fraiz's testimony in the Telemundo Action was offered on behalf of plaintiff Latele Venezuela only; and, further, that his testimony was limited in scope to the copyright ownership of the single novella at issue in that suit.

Assuming Plaintiff's representation about Piantini's pre-filing due diligence is true, it is nonetheless deficient in another respect: it is meaningfully silent on the issue of what legal inquiry Plaintiff's counsel conducted before filing the Amended Complaint. At the evidentiary hearing, Piantini and Kassier each testified about his own research that led to the realization that Fraiz's testimony in the Telemundo Action was *mistaken*, and that, as a matter of law, the executed Assignments had effectuated the transfer of ownership from one entity to Fraiz to the other entity. The findings that follow here are by far the most difficult to memorialize, not on account of their complexity but their impact beyond this case, of which I am fully aware. Nonetheless, regarding their pre-filing investigation into the legal support for Plaintiff's claims, I find the testimony of attorneys Piantini and Kassier contrary to the record and not credible.

As recounted above, four witnesses testified on behalf of the Plaintiff—two attorneys and two owners—and each offered varying accounts of the pre-suit research into the question of Plaintiff's copyright ownership. Each witness took credit for discovering that the 2012 Assignments were irrevocable and testified to a different moment of realization that Plaintiff Latele US owned the copyrights (except, notably, for Fraiz, who described three separate realizations without attempting to reconcile even his own testimony). As recounted above, the testimony of Fraiz and Garcia, and specifically their admission to deciding to treat the Assignments as valid without the benefit of legal advice, sharply undermines counsel's account of discovering the theory through pre-suit or pre-filing legal research.

Accordingly, I do not credit the testimony of Kassier that he researched in 2017 before filing the Amended Complaint and discovered that under copyright law, the Assignment effectuated a transfer, revocable only upon a subsequent writing. His testimony, moreover, cannot be reconciled with Plaintiff's failure to advance the caselaw purportedly then discovered at any point during the life of the litigation; most pointedly, no such law was offered in opposition to Defendants' Amended Motion to Dismiss, which raised a factual attack on Plaintiff's standing and required Plaintiff to prove its claim of ownership in order to maintain the suit. If Kassier had found legal support for Plaintiff's current theory supporting its claim of ownership back in 2017, there was no time more critical to advance it than in Plaintiff's Response to that motion. Because it did not, I do not credit his testimony that he conducted the research he described.

Unlike attorney Kassier's testimony that he conducted specific research at a precise moment in time, Piantini generally testified that he looked at the issue of ownership and determined that Latele US owned the copyrights, and that he advised the Plaintiff representatives of his conclusion before they filed suit through another attorney. His testimony on this point is self-

serving and too vague to demonstrate the sufficiency of the inquiry he claims to have undertaken. More importantly, the legal conclusion he claims to have reached pre-suit seems to have developed and evolved throughout this litigation.

As detailed above, in his written response to the Motion for Sanctions, Piantini argued that Fraiz may have been mistaken in his belief that the Transfer Agreement and Assignments were invalid. Then, at the first hearing on the Motion for Sanctions conducted in June of 2018, Piantini offered the following explanation for Plaintiff's claim to own the copyrights:

> What I believe the evidence will show, as a proffer to the court, is that sometime after that hearing, within the two years that followed, Mr. Fraiz decided to leave the catalog as part of a capital contribution and ownership to Latele U.S. He actually went out and got a partner to exploit the catalog if he could, and he decided to leave it there.

(ECF No. 94 at 49). Consistent with Garcia's testimony recounted above, Piantini argued essentially that, in 2015, Fraiz did consummate the transfer agreement (executed in 2012) because he controlled both Latele entities: "he's absolutely within his right any time thereafter to leave them there and ratify that agreement because the only one that owed him the money was himself" (*id.* at 53).

As the reader will recall, however, no such evidence was advanced by Plaintiff in defense of its standing when challenged by Defendants' Amended Motion to Dismiss, perhaps as a result of counsel's post-filing appreciation that, as a matter of fact, Latele Venezuela had continued to assert ownership over the copyrights after 2012. Latele Venezuela filed a lawsuit (the Telemundo Action) and entered into a settlement agreement within two years of executing the Assignments, and, attendant to both, Latele Venezuela (by and through Fraiz) attested to owning the catalog of copyrights asserted in this case by Latele US. My Recommendation (ECF No. 141) relied, in part, on these assertions of ownership by Latele Venezuela in finding that Plaintiff Latele US did not accept transfer of the copyrights in 2012. It is with some cynicism that I view Piantini's

testimony—now—that he concluded in 2015 that Plaintiff's proof of ownership is not dependent, as he previously argued to me, on evidence of subsequent ratification of the Transfer Agreements but rather that he had determined pre-suit that under copyright law, only a subsequent writing could reverse the transfer of copyrights effectuated by the Transfer Agreements.

No court relishes the finding that a member of the bar offered false testimony and it gives me no pleasure in doing so. Having considered all of the evidence, cautiously and slowly, and having had the benefit of the witnesses testify under oath before me, I nonetheless find the testimony offered by attorneys Piantini and Kassier that they each conducted legal research before filing the Amended Complaint cannot be credited; and further find that the pre-filing investigative steps taken, if any, were objectively unreasonable in light of counsel's well-founded notice of this material deficiency in Plaintiff's claims.[11]

### 3.   Inherent Authority

Defendants additionally seek an order sanctioning Plaintiffs through the Court's inherent authority. Acts that degrade the judicial system, including attempts to deprive the court of jurisdiction, fraud, misleading and lying to the Court, may be sanctioned through the court's inherent power. *See Stonecreek - AAA, LLC v. Wells Fargo Bank N.A.*, No. 1:12-CV-23850, 2014 WL 12514900, at *1 (S.D. Fla. May 13, 2014) (citing *Chambers*, 501 U.S. at 41). The key to unlocking the Court's inherent authority to sanction, Defendants acknowledge, is a finding of bad faith (*see* ECF No. 150 at 4). In a case cited by Defendants, it has been recognized that the evidentiary standard the Court should apply in deciding bad faith is by clear and convincing

---

[11] It is telling that Plaintiff's prior counsel withdrew mere days after conferring with defense counsel about the standing deficiency. Defense counsel requested an opportunity for a continued hearing date in order to call counsel Rivero to testify and proffered that he intended to elicit Rivero's reasons for withdrawing. I denied the request for an additional hearing date for the proffered testimony, finding it cumulative to the evidence in the record to the extent it would be relevant. I make no findings here about Rivero's reasons to withdraw, but do draw the inference from the timing of his withdraw that Piantini and Kassier should have been on notice that there may be an uncurable deficiency with the claims and undertaken their prefiling investigation with a proportional level of caution.

evidence; moreover, it is not clear "that false statements, standing alone, provide a sufficient basis for the imposition of sanctions pursuant to the Court's inherent authority." *Barash v. Kates*, 585 F. Supp. 2d 1347, 1366 (S.D. Fla. 2006) (citation omitted). Fabrication of evidence or interference with the other parties' ability to present its case, by comparison, are recognized forms of fraud sufficient to find bad faith and impose sanctions under the court's inherent authority. *See id.*

Without minimizing the significant violations of the Federal Rules of Civil Procedure and the colossal waste of resources Plaintiffs' conduct has caused, I do not recommend that the Court rely on its inherent authority here to impose sanctions against Plaintiffs. First and foremost, the violation of Rule 11 is clearly evidenced on the record and that finding is sufficient to impose sanctions upon Plaintiffs. Thus, it is unnecessary to reach the question, under the higher standard attendant to unlocking the Court's inherent authority, of whether the evidence clearly and convincingly supports a finding that Plaintiffs brought and maintained this suit in bad faith. As described above, the misconduct on which Defendants' Motions rely arises from the assertion of claims by Plaintiff—the bringing of this lawsuit itself—when Plaintiff, its owners and its counsel all lacked a good faith basis to assert these claims on behalf of *this* Plaintiff. Otherwise stated, it is essentially the same basis on which Defendants' Rule 11 argument is predicated. A Rule 11 violation has here occurred, and the Rule provides for sanctions upon such a finding. There is neither sufficient showing nor need for the Court to rely on its inherent authority to sanction Plaintiffs under the circumstances.

**b.  <u>Sanctions Are Warranted</u>[12]**

The "selection of the type of sanction to be imposed lies within the district court's sound exercise of discretion." *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001) (internal

---

[12] "Plaintiff's voluntary dismissal of a complaint does not deprive the district court of jurisdiction to award sanctions based on the frivolousness of the complaint." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990).

quotation omitted). An appropriate sanction may include "an order directing payment to the movant of some or all of the reasonable attorneys' fees ... directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Accordingly, the district court has discretion to tailor sanctions to the particular facts of the case. *Donaldson v. Clark*, 819 F.2d 1551, 1557 (11th Cir. 1987).

Defendants seek as a sanction all fees and expenses that have been incurred in defending against the lawsuit from the date the Complaint was filed, on December 27, 2016. Defendants seek $737,222.20 in fees and $36,094.83[13] in costs through May 20, 2019, for a total of $779,537.89. Because all Defendants were represented by the same counsel, they seek an award without apportionment among the Defendants. Similarly, they seek an award that is jointly and severally imposed on Plaintiff, Fraiz, and Plaintiff's counsel Piantini and Kassier. In addition to an award of attorney's fees and costs, Defendants ask that this Court enter an Order dismissing the Amended Complaint with prejudice to preclude Plaintiff from bringing any future lawsuit regarding the copyrights at issue.

Plaintiffs oppose the Motions for Sanctions in all respects but have not raised any specific objections to the fees or costs advanced by Defendants in support of their demand for sanctions. Specifically, Plaintiffs have not objected to the hourly rates charged by defense counsel, nor objected to any time-entries, nor costs; nor even objected to Defendants' pursuit of sanctions against Fraiz individually. Plaintiff's counsel did argue and offer testimony that an award of the magnitude sought would be devastating to counsel. For the reasons that follow, it is my recommendation that the Court order monetary sanctions against Plaintiff and attorneys Piantini and Kassier, but not Plaintiff's president non-party Fernando Fraiz.

---

[13] Defendants had submitted a demand for costs in the amount of $42,315.69, but filed a notice explaining that upon review of its invoices, the firm had issued an overpayment to one vendor and corrected the total amount of costs to the above (ECF No. 186).

In the case advanced by Defendants in support of their request for an award against non-party Fraiz in his individual capacity, the court relied on veil-piercing to find the non-party CEO should be sanctioned for the acts of the corporate defendant. *See, e.g., Aldmyr Sys., Inc. v. Friedman*, 215 F. Supp. 3d 440, 465 (D. Md. 2016), *aff'd*, 679 F. App'x 254 (4th Cir. 2017).[14] Defendants herein have similarly argued that Fraiz used the corporate form to perpetuate a fraud upon the Court and further rely on his verification of the Amended Complaint to support a finding that he should be sanctioned individually, despite his non-party status in this action.

For the same reasons I reject Defendants' request that the Court enter sanctions on its inherent authority, I do not recommend sanctioning non-party Fraiz. The evidence adduced supports a finding that Fraiz, and his partner Garcia, certainly failed to appreciate corporate formalities, and their treatment of assets as interchangeable between the corporate entities has led to this recommendation for sanctions. Notwithstanding, it is not my finding that the conduct supports a finding of bad faith or fraud that would support the Court piercing the corporate veil and justify entry of sanctions against Fraiz individually.

### 1. **Amount of Sanctions Warranted**

In the Eleventh Circuit, the lodestar method is used to determine the amount of attorney's fees awarded as Rule 11 sanctions. *Danubis Grp., LLC v. Landmark Am. Ins. Co.*, 685 Fed. Appx. 792, 803 (11th Cir. 2017) (estimating the value of a legal work by multiplying the "hours reasonably expended by a reasonable hourly rate" and quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). With respect to the total award sought, the fee applicant bears the initial burden of submitting evidence sufficient to allow the court to confirm

---

[14] Defendants additionally cited to *Sunday's Child, LLC v. Irongate AZREP BW LLC*, 327 F. Supp. 3d 1322, 1349 (D. Haw. 2018), which had relied upon *Aldmyr* in sanctioning the owner of a limited liability corporation, but the decision has since been vacated. *Sunday's Child, LLC v. Irongate AZREP BW LLC*, 804 F. App'x 512, 514 (9th Cir. 2020).

that the requested fees are not excessive. *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 13151676, at *2 (S.D. Fla. Sept. 29, 2011) (citing *ACLU v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999)). When a district court finds the number of hours claimed is unreasonably high, the court has two choices; it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).

The Court should additionally consider the extent to which the moving party could have avoided or mitigated its expenses. *Baker v. Alderman*, 158 F.3d 516, 528 (11th Cir. 1998). Additional relevant factors include (1) the conduct and intent of the parties; (2) the effect the violation had on the litigation; (3) the amount necessary to deter similar misconduct; and (4) the sanctioned party's ability to pay. *Matthiesen v. Matthiesen*, No. 16-20360-CIV, 2018 WL 1121538, at *5 (S.D. Fla. Mar. 1, 2018) (citing *Thomas v. Early Cty., Ga.*, 518 Fed.Appx. 645, 646 (11th Cir. 2013)). The purpose of Rule 11 is deterrence, not compensation, and an award of all attorneys' fees would not serve the purpose of Rule 11 sanctions. *See Muraoka v. American Osteopathic Ass'n*, 117 F.R.D. 616, 619 (N.D.Ill. 1987); *see also Baker*, 158 F.3d at 528 (observing that deterrence is the touchstone of the Rule 11 inquiry).

In support of their requested fees and costs, Defendants attached the time diaries and billing statements that were submitted to Defendants beginning in May of 2017. Defendants additionally presented testimony from both the supervising partner on the case and an expert who opined that the fees were reasonably incurred. The Defendants rely on a number of cases for the proposition that the Court should award all fees incurred in defense of this action because all work performed flowed from the filling of the original frivolous complaint. Review of the cases cited, however, demonstrates how vastly unreasonable Defendants' request for nearly a million dollars is.

Beginning with *In re BankAtlantic*, the court's initial sanctions order there permitted defendants there to seek an award of one-tenth of the fees incurred in prosecution of the sanctions motion, and upon review of the time records supporting the fees sought, the court further reduced the lodestar calculation by up to fifty percent. *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 13151676, at *6. In other cases cited by Defendants, the fees awarded were similarly those incurred in the performance of limited but critical aspects of the litigation. *See Osborn v. Bell Helicopter Textron, Inc.*, 828 F. Supp. 446, 452 (N.D. Tex. 1993)(awarding $3,010.87 for fees incurred in relation to a single deposition). And where courts have recognized, as Defendants here argue, that the appropriate sanctions award included all work performed as a result of the plaintiff's filing of a frivolous complaint, the attorney's fees incurred and awarded were *reasonable*. In *Jones*, 145 F.R.D. at 125 for example, the court made no reduction to the lodestar calculation of counsel's fees and awarded all fees incurred in responding to the complaint, discovery and even the filing of summary judgment—all amounting to an award of $16,415.94.[15]

Defendants additionally rely on *Gutierrez*, 729 F. Supp. at 1335, for the proposition that the sanctions award should include attorneys' fees and costs incurred in pursuing such sanctions. In this case, the fees incurred *after* the case was dismissed with prejudice, thus the fees incurred *solely* in pursuit of a sanctions award, are in excess of $100,000. While it was clearly important to Defendants to pursue—and even renew—the sanctions motions, the fees incurred in this task were excessive and unreasonable; review of all of Defendants' time records and related evidence leads me to find that throughout the litigation, fees were unreasonably incurred and accordingly any award based thereon must be significantly reduced.

---

[15] Even adjusting for inflation, today's value of the award in *Jones* would be approximately $30,000, or less than 5% of the award sought herein.

First, in determining the award recommended here, I have not considered fees or costs incurred before the filing of the Amended Complaint in 2018. While Defendants argue that the original complaint was equally frivolous, the Sanctions Motions, and indeed this Recommendation, has focused on the Rule 11 violation that occurred as a result of the filing of the *Amended* Complaint. *See Jones*, 145 F.R.D. at 122. Moreover, attorneys Piantini and Kaisser had not even appeared in this case until January 5, 2018. By the time counsel appeared, according to defense counsel's time records, the defense team's fees and costs already exceeded $100,000. Defendants' insistence that the Court need not apportion the sanctions between the actors cannot be reconciled with their attempt to hold counsel accountable for expenses incurred before they filed the pleading that forms the basis for finding a violation of Rule 11. Thus, the calculation of attorneys' fees will begin in March of 2018, once Plaintiff's counsel was put on notice that they could incur sanctions if they did not timely correct the violation. *Matthiesen*, 2018 WL 1121538, at *6 (awarding $4,393 in fees as sanction for violating Rule 11).

I have examined the evidence of Defendants' expenses, including the initial 180-pages of their billing records, and supplementation of additional 52 pages (ECF No. 178). The unreasonably high number of hours billed reflects the pervasive duplication of efforts by multiple attorneys contributing to the same project. With few exceptions, every task undertaken by the defense legal team was performed by multiple attorneys whose time records do not afford the Court the ability to discern what unique contribution each added to the endeavor.[16]

---

[16] I will note here that defense counsel made particularly efficient use of associate Sara Klco's time to manage the fees incurred. As the attorney billing at the lowest hourly rate, Ms. Klco's time entries reveal that she handled a significant portion of the research, writing, and strategy. Defendants further capitalized on that efficiency by relying on Ms. Klco to present argument at the various hearings, including the evidentiary hearing. Doing so not only benefited the Court, by advancing the attorney most knowledgeable about the record and the case, but additionally benefited the client, by not duplicating the expense to bring another attorney up to speed to argue in Court. In this regard, defense counsel's election is to be lauded.

Additionally, the time diaries include time billed for tasks that should not be included in the lodestar calculation. For example, the diaries include entries by attorneys for performing clerical work, such as review the docket on Pacer; or non-litigation work, such as preparing an audit for the client. There are other entries that appear to have been entered on the matter in error; for example, one attorney submitted time to attend a hearing before Judge Simonton, who never presided over this dispute, so it may be assumed it was entered on the wrong case matter. Because defense counsel made no effort to identify time incurred solely as a result of the Rule 11 violation, on the theory that *all* time flowed from the filing of the complaint, there are a number of entries for which the Court lacks adequate detail to determine that indeed it was fairly attributable to the violation: for example, some diary descriptions have been redacted, and time spent in settlement negotiations has also been included in Defendants' submission.

In determining the lodestar calculation, the Court is not required to become a green-shade accountant. *Fox v. Vice*, 563 U.S. 826, 838 (2011). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* My analysis of the billing records shows that the amount billed for fees following service of the first Motion for Sanctions through the Court's conclusion of the evidentiary hearing on this proceeding is $576,742.50. It is my recommendation that the Court order a total sanctions award of $192,247.5, or one-third of that amount to account for the Defendants' unreasonably high number of hours billed and to additionally correct for the errors described herein. I also find the total amount of fees exceeds that which was necessarily incurred to defend this suit and reach the result obtained--dismissal for want of standing--considering defense counsel's early identification of the deficiency. This is not to diminish the quality of

lawyering provided by counsel or the result obtained. The voluminous submission makes it impractical for the Court to attempt to reduce the lodestar by specific entries and so, instead, an across the board cut is recommended.

I do not recommend that the Court's award include the costs incurred and sought by Defendants for two reasons. First, the invoices and records submitted do not support a finding that the costs were necessarily incurred. For example, charges for Westlaw research do not describe what research was undertaken, but counsel's diaries reveal significant overlap and duplication in research detailed by the attorneys. Second, the total award recommended here is exceptional, even without inclusion of the costs, and an increase in the award by another $36,000 would defeat Rule 11's goal of deterrence, not compensation. I find that $192,247.5 is a significant award and sufficient to meet this goal.

## 2.   <u>Apportionment of Sanctions</u>

Similarly, I find that imposing the full amount of that sanction award jointly and severally against Plaintiff and its attorneys Piantini and Kassier in this case would be grossly disproportionate to the need for deterrence. Plaintiff Latele US should bear the lion's share of the burden for its misconduct in bringing this suit. I recommend that $153,798 be imposed against Plaintiff Latele.

Arguably, finding oneself the subject of a sanctions order such as this should be deterrence enough for any attorney. Yet, in this case, I find that some monetary sanction must also be imposed against counsel in light of the serious failures that have occurred and their role in maintaining this frivolous litigation. I therefore recommend that the remaining $38,449.50 be imposed against attorneys Piantini and Kassier, jointly and severally. *See Worldwide Primates, Inc.*, 87 F.3d at 1254 (affirming trial court's award of sanctions against client and lawyer in specified respective

36

amounts). I recognize that this is a significant amount of money to require counsel to pay. However, defense counsel informed Plaintiff's counsel of the deficiency herein immediately upon appearance and warned them of Defendants' intention to move for sanctions. Indeed, the First Motion was served on February 14, 2018, just month after counsel first appeared in the matter (ECF No. 54). Plaintiff's counsel ignored these warnings and elected to pursue these claims. A monetary award is warranted here to deter counsel from conducting litigation in a similar manner and to reimburse Defendants; at least in part. *Jones*, 145 F.R.D. at 125.

I further take into account the limited evidence adduced on the respective ability to pay an award of sanctions by counsel and the Plaintiff and find it sufficient to impose the awards recommended herein. *LaFavors v. Thayer*, 706 F. App'x 489, 492 (11th Cir. 2017) (affirming imposition of monetary sanctions against a *pro se* plaintiff, who the trial court noted paid filing fee). While no evidence was adduced with respect to Plaintiff's ability to pay, counsel Piantini and Kassier testified without contradiction that an award in an amount contemplated by Defendants (i.e., in excess of $700,000) would be financially devastating. I have considered this testimony which, while fairly non-specific, nonetheless informs my recommendation that the monetary amount of sanctions imposed against counsel be limited to $38,449.50, jointly and severally.

## III.   OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Federico A. Moreno, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal

conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade*

*Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers this on this 5th day of February, 2021.

_____

**LAUREN F. LOUIS**
**UNITED STATES MAGISTRATE JUDGE**